IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BRIAN MCCLENDON,**

**Plaintiff,**

**v.**

**PERCY MYERS, JOHN BARWICK, WEXFORD HEALTH SOURCES, INC., and LATOYA HUGHES,**

**Defendants.**

**Case No. 26-cv-1428-NJR**

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Brian McClendon, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint (Docs. 1, 2), McClendon alleges that Defendants were deliberately indifferent to his chronic pain.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

On February 14, 2024, McClendon arrived at Pinckneyville Correctional Center (Doc. 1, p. 8). During his health examination, McClendon explained that he suffered from asthma and chronic pain in his neck and left knee (*Id.*). He noted that he previously attended the Neuroscience Center Pain Center in Chicago, Illinois, for his chronic pain (*Id.*). He also arrived at Pinckneyville with a low bunk, low gallery permit, ice two times a day, a waist chain permit, and a knee brace (*Id.*). McClendon also had in his possession a cervical pillow and foam eggshell cover for his mattress (*Id.*). But at Pinckneyville, he was informed that the permits from his prior institution would have to be reviewed and updated by the provider at Pinckneyville.

As to his chronic pain, McClendon was previously diagnosed with issues with his back including loss of disc height at all levels from C3-C7 and degenerative changes in the discs (Doc. 1, p. 9). He was previously treated by UIC Neuroscience Center Pain Center from 2020 through 2024 (*Id.* at p. 8). McClendon was prescribed Tramadol and Gabapentin for his chronic nerve pain, both of which had been approved by prior Wexford providers (*Id.* at pp. 8-9). He had regular follow-up visits with providers at the Pain Center to monitor his pain and adjust medications (*Id.* at p. 9). McClendon continued with his prescriptions at Pinckneyville until the prescriptions ran out on March 4, 2024 (*Id.*).

On March 19, 2024, McClendon saw Dr. Percy Myers for his pain. Dr. Myers claimed that McClendon's records did not document the Pain Center's recommendations or prescriptions (Doc. 1, p. 9). He further claimed that McClendon did not need the

medications, that he looked fine, and he would not be attending any more appointments at the Pain Center (*Id.*). On March 29, 2024, McClendon filed a grievance about Dr. Myers's refusal to renew his prescriptions. On May 8, 2024, he filed another grievance because of Dr. Myers's refusal to honor his prior prescriptions as well as taking away his medical permits (*Id.* at p. 10). McClendon saw nurses on sick call in May and June 2024 for his severe pain in his neck and knee, but he received no relief. He wrote a formal complaint to the governor's office to request an investigation into the medical care provided at Pinckneyville (*Id.*).

On August 1, 2024, McClendon again saw Dr. Myers for his pain (Doc. 1, p. 10). McClendon alleges that Dr. Myers maintained that there was nothing in his medical records documenting pain in his neck. McClendon offered to provide Dr. Myers with his copies of medical records from his visits to the Pain Center (*Id.*). Dr. Myers rescheduled the appointment and instructed McClendon to bring his medical records with him to the next appointment (*Id.*). McClendon brought his medical records to his August 8 appointment with Dr. Myers (*Id.*). But Dr. Myers still refused to renew the medications. McClendon was also informed that his permits could not be updated at Pinckneyville until Dr. Myers approved the permits (*Id.*). During a routine shakedown in September, officers confiscated his foam mattress topper (*Id.* at pp. 10-11).

McClendon continued to see nurses on the nurse sick call line about his pain (Doc. 1, p. 11). On November 1, 2024, McClendon was sent out to an orthopedic clinic for the pain in his knee (*Id.*). But upon his return, he learned the clinic recommended that he discontinue the Gabapentin, despite McClendon's claim that the medication was

prescribed by the Pain Clinic for his neck pain (*Id.*). McClendon continued to submit grievances and write letters to the governor about his medical treatment (*Id.*).

On January 7, 2025, McClendon again complained of pain in his neck and his medication was changed to Robaxin and Cymbalta (Doc. 1, p. 11). But on January 29, 2025, McClendon again presented to the nurse sick call line because one of the medications was causing headaches and blurred vision (*Id.*). He also developed pain and numbness in his left arm and was seen on the nurse sick call line on two occasions in February and March (*Id.* at p. 12). Although he was told that he would be referred to a medical provider, he was not seen. On April 15, 2025, he filed another grievance (*Id.*). He continued to be seen on the nurse sick call line for his pain and numbness through June but did not see a doctor until July 1, 2025 (*Id.*). On August 8, 2025, McClendon wrote to Jennifer Parrack, chief of programs for IDOC to complain about his issues with the grievance process at Pinckneyville (*Id.*). On October 17, 2025, he wrote to John Barwick, complaining about the lack of response to his grievances (*Id.* at p. 13).

On November 17, 2025, McClendon was sent to a pain clinic for his chronic neck pain (Doc. 1, p. 13). He was prescribed Tramadol and Gabapentin, and an MRI was ordered (*Id.*). McClendon notes that providers at the pain clinic planned to adjust his medication based on the MRI results (*Id.*).

McClendon alleges that Dr. Myers ended his Tramadol prescription despite McClendon's pain being well documented in his medical records (Doc. 1, p. 14). Dr. Myers allegedly disregarded the recommendations and orders of providers who specialized in chronic pain. He also often delayed treatment by refusing to see

McClendon for several months at a time (*Id.*). McClendon alleges that Wexford Health Sources, Inc. has a policy and practice of delaying outside referrals and providing ineffective care in order to save costs. McClendon alleges that he was taken off the Tramadol and initially prescribed Tylenol by Dr. Myers to save money (*Id.* at pp. 15-16).

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **Eighth Amendment deliberate indifference to medical needs claim against Dr. Myers, John Barwick, and Latoya Hughes for delaying medical treatment and denying McClendon's requests for pain medications for his neck pain.**

**Count 2:** ***Monell* claim against Wexford Health Sources, Inc. for having a policy of delaying outside referrals and denying care and/or utilizing less effective treatments in an attempt to save costs.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[1]

At this stage, McClendon states a viable Eighth Amendment claim against Dr. Myers. He alleges that Dr. Myers ended his pain medication prescriptions and

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

permits despite ample support in the medical records for McClendon's need for those medications and items. He alleges that Dr. Myers went against the recommendations of the Pain Clinic and used less effective medications. He also refused to see McClendon for months at a time and delayed his ultimate referral to another pain clinic.

But McClendon fails to state a claim against John Barwick and Latoya Hughes. McClendon alleges that he wrote detailed grievances that were reviewed by John Barwick and Latoya Hughes but they refused to investigate his claims (Doc. 1, p. 14). Grievance officials cannot be liable simply for denying or failing to respond to grievances. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (there is no "free-floating obligation to put things to rights"). Further, as high-ranking officials they were allowed to delegate the treatment of inmates to the medical providers. *See Burks*, 555 F.3d at 595. This appears to be exactly what the grievance officials did as McClendon's attached grievances were denied with a note that all treatment, including decisions regarding medications, are at the discretion of the medical professionals (Doc. 2, pp. 22-24, 60-61; Doc. 2-1, p. 9). The allegations do not suggest deliberate indifference on the part of Barwick and Hughes. Thus, the claims against them in Count 1 are **DISMISSED without prejudice**. The Court notes, however, that as part of his request for relief, McClendon seeks injunctive relief in the form of an order to return him to the Pain Center for further treatment (Doc. 1, p. 17). As such, Warden John Barwick will remain in the case (in his official capacity only) for the purpose of implementing any injunctive relief that might be granted to McClendon at the close of the case.

McClendon also states a viable claim against Wexford Health Sources, Inc. for its policies and/or practices that allegedly led to delays and denials in his case. Thus, Count 2 shall proceed against Wexford.

**Motion for Preliminary Injunction**

In addition to his Complaint, McClendon filed a motion for preliminary injunction (Doc. 3) seeking an order compelling officials to return him to the University of Illinois Hospital Neuroscience Center Pain Center for evaluation and treatment. He also seeks placement in a correctional center in northern Illinois close to the Pain Center (*Id*. at p. 2).

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (2d ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

Simply put, McClendon has not demonstrated a likelihood of success on the merits at this stage. Although he alleges that Dr. Myers discontinued his Tramadol and Gabapentin from March 2024 through November 2025, McClendon admits that he was re-prescribed the medications by an outside pain clinic in November 2025. Further, the medical records that McClendon filed with his Complaint make clear that he received

medications for his pain. Although his Tramadol was discontinued, he continued to receive the Gabapentin twice daily (Doc. 2-1, p. 19). A nurse sick call note from March 2025 notes that he was prescribed Gabapentin (referred to by its brand name Neurontin) twice daily, and he also had a prescription for Cymbalta (Doc. 2-1, p. 84). A grievance response from the grievance officer, dated August 7, 2025, notes that McClendon was receiving Neurontin, Tylenol, and Mobic (*Id.* at p. 87). The response also notes that he was seen by a pain specialist and scheduled for a back injection (*Id.* at pp. 87, 94). He continued to be seen by nurses on the nurse sick call line, saw Dr. Myers on several occasions, and acknowledges being referred to a pain clinic, although not UIC Pain Center that he previously attended. The records make clear that McClendon is receiving care. Although he may not agree with the care, he "is not entitled to demand specific care." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (quoting *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011)). As it appears that McClendon is currently receiving the medications he requested and has been seen by a specialist, his request for injunctive relief is **DENIED**.

## Motion for Counsel

McClendon has also filed a motion for recruitment of counsel (Doc. 4). He notes that he has tried to obtain counsel on his own but has been unsuccessful. He also notes that he has some college education (*Id.* at p. 2). But given the early stage of the litigation process, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to

the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] Further, there is nothing currently pending that would require counsel. Once the defendants have been served and file answers, the Court will enter a scheduling order setting forth the next steps in the litigation process. If McClendon experiences difficulties in litigating the case at that time, he may submit another request for counsel. At this time, his motion is **DENIED without prejudice**.

## Disposition

For the reasons stated above, Count 1 shall proceed against Dr. Myers. Count 2 shall proceed against Wexford Health Sources, Inc. To the extent McClendon seeks injunctive relief, Warden John Barwick is **ADDED** as a defendant in his official capacity only.

The Clerk of Court shall prepare for Dr. Percy Myers, Wexford Health Sources, Inc., and John Barwick (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by McClendon. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by McClendon, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Because McClendon's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against McClendon, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, McClendon is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to

comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 3, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**

**<u>Notice to Plaintiff</u>**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**